IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | | |
|---|---|---|
| INNOVATION SCIENCES, LLC, | | |
| Plaintiff, | | |
| v. | | Civil Action No. |
| | | |
| FRONTPOINT SECURITY SOLUTIONS, LLC, | | 1:26-cv-1894 |
| and | | |
| FRONTPOINT SECURITY HOLDINGS, LLC | | |
| | | |
| Defendants. | | |

COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Innovation Sciences, LLC ("Innovation Sciences" or "Plaintiff"), for its

Complaint against Defendants Frontpoint Security Solutions, LLC and Frontpoint Security

Holdings, LLC, ("Frontpoint" or "Defendants"), alleges as follows:

**NATURE OF THE ACTION**

1.     This is an action for patent infringement arising under the Patent Laws of the

United States, 35 U.S.C. §§ 1 et seq., including 35 U.S.C. §§ 271, 281, 283, 284, and 285.

2.     FrontPoint Defendants have directly and indirectly infringed, and continues to

infringe, one or more claims of United States Patent Nos.

10,368,125,
11,109,094,
10,104,425, and
10,469,898

(collectively, the "Patents-in-Suit") by, among other things, making, using, offering to sell,

selling, and/or importing into the United States, without authority, certain wireless security

systems and related products and services, including the Frontpoint Hub, Frontpoint Display

-1-

Hub+, Frontpoint IQ Panel, Frontpoint mobile application, Frontpoint sensors, Frontpoint cameras, and associated monitoring services.

## PARTIES

3.     Plaintiff Innovation Sciences, LLC is a Texas limited liability company with its principal place of business at 5800 Legacy Circle, Plano, Texas 75024.

4.     Upon information and belief, Defendants are Virginia limited liability companies with Frontpoint Security, LLC having principal places of business at 22650 Executive Drive, Suites 119-122, Sterling, Virginia 20166, and at 22675 Dulles Summit Court, Suite 100, Sterling, Virginia 20166.   With Frontpoint Security Holding, LLC having its place of business at 1595 Spring Hill Road, Suite 700, Vienna, Virginia 22182.

## JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a), as this is a civil action for patent infringement arising under the patent laws of the United States.

6.     This Court has personal jurisdiction over Defendants because, upon information and belief, Defendants are both Virginia limited liability company with their principal place of business in this District.

7.     Venue is proper in this District under 28 U.S.C. §§ 1391 and 1400(b) because Defendants reside in this District, with their principal places of business located in Sterling and Vienna, Virginia.

## THE PATENTS-IN-SUIT

8.     Plaintiff Innovation Sciences is the owner by assignment of all right, title, and interest in the following patents, each of which was duly and legally issued by the United States

-2-

Patent and Trademark Office:

U.S. Patent No. 10,368,125, entitled "Wireless HUB System," issued on August 6, 2019 (the "'125 Patent"). A true and correct copy of the '125 Patent is attached hereto as Exhibit A.

U.S. Patent No. 11,109,094, entitled "System Comprising a Central Device with an Interface for Receiving and Decoding Signals," issued on August 31, 2021 (the "'094 Patent"). A true and correct copy of the '094 Patent is attached hereto as Exhibit B.

U.S. Patent No. 10,104,425, entitled "Wireless Device with Network Interface and Processor for Security Monitoring," issued on October 16, 2018 (the "'425 Patent"). A true and correct copy of the '425 Patent is attached hereto as Exhibit C.

U.S. Patent No. 10,469,898, entitled "System and Method for Communicating Information by a Centralized HUB System," issued on November 5, 2019 (the "'898 Patent"). A true and correct copy of the '898 Patent is attached hereto as Exhibit D.

9. The Patents-in-Suit are valid, enforceable, and were duly issued in full compliance with Title 35 of the United States Code. Innovation Sciences holds all substantial rights in the Patents-in-Suit, including the right to sue for past and future infringement and to recover damages therefor.

## THE ACCUSED FRONTPOINT PRODUCTS AND SERVICES

10. Frontpoint provides wireless security and home automation systems to residential and commercial customers throughout the United States.

11. The accused Frontpoint products and services include, but are not limited to:

- Frontpoint Display Hub+
- Frontpoint Hub + Keypad
- Frontpoint IQ Panel

- Door & Window Sensors
- Motion Sensors
- Frontpoint Mobile App
- Frontpoint Cloud Monitoring Platform
- Frontpoint Cameras (Indoor, Outdoor, Doorbell, Floodlight)

12.     Frontpoint imports, markets, sells, configures, provisions, activates, supports, updates, monitors, and profits from the accused systems regardless of whether certain hardware components are manufactured by third parties.  Frontpoint is not a mere reseller but actively integrates, configures, activates, monitors, supports, and updates the accused systems under the Frontpoint brand and derives recurring revenue from associated monitoring, cloud, and mobile application services.

13.     Frontpoint continues to sell, support, monitor, maintain, update, and profit from the accused products and services throughout the United States, including within this District.

14.     On January 10, 2025, Innovation Sciences, through its counsel, sent Defendants a letter notifying it of the '125 Patent and the infringement allegations. The letter included a detailed infringement analysis and representative claim chart identifying specific accused Frontpoint products and explaining how those products satisfied the limitations of Claim 38 of the '125 Patent. A true and correct copy of this notice letter, with the claim chart, is attached as Exhibit E.

15.     Upon information and belief, Frontpoint received the notice letter on or about January 10, 2025. Despite receiving notice of at least the '125 Patent and the infringement allegations identified in the notice letter, Frontpoint has continued to make, use, offer for sale, sell, and/or import its infringing products and services without a license from Innovation Sciences.

16.     Frontpoint's infringement is evidenced by its public product documentation, marketing materials, technical specifications, user manuals, and the operation of the accused products and services, as detailed below.

17.     Frontpoint has directly infringed, and continues to directly infringe Claims of each of the Patents-in-suit, literally and/or under the doctrine of equivalents, by making, using, offering for sale, selling, and/or importing the Frontpoint Hub, Frontpoint Display Hub+, Frontpoint sensors, Frontpoint cameras, the Frontpoint mobile application, and associated cloud-connected monitoring services.

18.     In addition to directly infringing the Patents-in-Suit, Frontpoint has and continues to indirectly infringe the Patents-in-Suit by actively inducing and/or contributing to the infringement of others, including its customers, end-users, and installers.

19.     Frontpoint actively induces infringement by making, selling, offering for sale, and importing its accused products and services, knowing and intending that the end-users and customers will use the products in a manner that infringes the Patents-in-Suit. Frontpoint provides instructions, technical support, and marketing materials that encourage and instruct users on how to install and operate the system in an infringing manner. For example, Frontpoint instructs its customers on how to "pair" sensors to the Hub, configure the system, and use the mobile app to receive alerts and view video, all of which constitute the infringing use of the claimed inventions. [see  Exhibit F Frontpoint Security Website.]

20.     Frontpoint also contributorily infringes by selling components of the claimed systems (e.g., the Frontpoint Hub, IQ Panel 4, sensors, cameras) that are especially adapted for use in the infringing systems described herein and, when configured and operated as instructed by Frontpoint, are not staple articles of commerce suitable for substantial non-infringing use.

-5-

## COUNT I
## INFRINGEMENT OF U.S. PATENT NO. 10,368,125

21.    Innovation Sciences realleges and incorporates by reference the above paragraphs as though fully set forth herein.

22.    Frontpoint has directly infringed, and continues to directly infringe, at least Claim 38 of the '125 Patent, literally and/or under the doctrine of equivalents, by making, using, offering for sale, selling, and/or importing the Frontpoint Hub, Frontpoint Display Hub+, Frontpoint sensors, Frontpoint cameras, the Frontpoint mobile application, and associated cloud-connected monitoring services.  Frontpoint also induce others, including its customers, to infringe by selling products which are knowingly used in an infringing manner.  Frontpoint also contributes to infringement by selling components of infringing systems.

23.    Claim 38 of the '125 Patent recites a wireless HUB system with a device identifier. Frontpoint's accused products and services embody each and every element of this claim.

24.    Limitation 38 (Preamble) – "A wireless HUB system with a device identifier comprising:" Frontpoint provides and offers to sell a wireless security hub, referred to as the Frontpoint Hub and/or the Frontpoint Display Hub+. The Frontpoint Hub can communicate wirelessly with cameras and sensors, and has a device identifier. The Frontpoint Hub, including its software and hardware components, constitutes a "wireless HUB system" within the meaning of the claim.  [See Exhibit F *Frontpoint Shop*, "Hub + Keypad." (https://www.frontpointsecurity.com/shop/hubkeypad)].

25.    Limitation 38a – "at least one memory configured to store a unique identifier of a sensing device in association with a user account, the user account comprising unique phone

identifier of a cellular phone;" The Frontpoint Hub includes memory configured to store device identifier data associated with a user account. The Frontpoint App, which can be accessed from a user's mobile phone, allows the system to associate sensor identifiers with the user's account. The user account is associated with the user's cellular phone, for example, via a unique phone identifier used for account login, push notifications, and system authentication. [See Exhibit F *Frontpoint Help*, "How can I see my sensors using the website?" (https://help.frontpointsecurity.com/en)].

26.     Limitation 38b – "a central controller;" The Frontpoint Hub is an electronic device that can perform programmable actions, such as receiving and processing signals from sensors, executing rules, and sending commands. Therefore, the Frontpoint Hub contains a central controller (e.g., a processor, microcontroller, or system-on-chip) within the meaning of the claim.

27.      Limitation 38c – "a short range wireless communication interface communicatively coupled to the central controller and configured to receive a wireless signal from a transmitter through a short range wireless channel; and "The Frontpoint Hub has a short-range wireless communication interface, such as a Z-Wave radio. This interface is communicatively coupled to the central controller and is configured to receive wireless signals from a transmitter (e.g., a sensor's radio) through a short-range wireless channel. [See Exhibit F *Frontpoint Help*, "Display+ Hub Tech Specs and Features" (describing "Quick and easy security sensor, Z-Wave automation device, and camera pairing process")].

28.     Limitation 38d – "a network communication interface communicatively coupled to the central controller and configured to provide a wireless communication through a network communication channel," The Frontpoint Hub is configured to provide wireless communication

through Wi-Fi and/or a cellular connection. Frontpoint advertises its "Dual cellular / WiFi connection for added security." [See Exhibit F *Frontpoint Shop*, "Hub + Keypad" (https://www.frontpointsecurity.com/shop/hubkeypad)].

29.    Limitation 38e – "wherein the unique identifier of the sensing device is associated with the unique phone identifier of the cellular phone;" The Frontpoint Hub associates the identifiers of sensing devices with the user's account. The user's account is accessed and managed via the Frontpoint App on the user's cellular phone. The system uses the user's unique phone identifier for account association and notification delivery. Thus, the unique identifier of the sensing device is associated with the unique phone identifier of the cellular phone under the meaning of the claim.

30.    Limitation 38f – "wherein the short range wireless communication channel is established for transmission of the wireless signal in response to a detection of an updated status by a sensor, the sensor and the transmitter being included in the sensing device," The Frontpoint Hub can receive signals from Frontpoint sensors. When a Frontpoint sensor detects an updated status (e.g., a door or window opening), it will transmit a wireless signal via the short-range wireless communication channel to the Frontpoint Hub. Frontpoint states that its sensors will "immediately send a wireless signal to your Frontpoint Hub triggering a high-decibel alarm." [See Exhibit F *Frontpoint Shop*, "Door & Window Sensors" (https://www.frontpointsecurity.com/shop/door-window-sensor)].

31.    Limitation 38g – "the sensing device being designated to detect the updated status and transmit the wireless signal;" The Frontpoint sensors are designated to detect updated statuses (e.g., an opened door/window) and transmit a wireless signal to the Frontpoint Hub upon detection.  [See Exhibit F (https://www.frontpointsecurity.com/shop/door-window-sensor)].

-8-

32.    Limitation 38h – "wherein the updated status is associated with a home device or an office device;" The Frontpoint Hub can be used in a home or office. Frontpoint's sensors monitor the status of home or office devices (e.g., doors, windows). [See Exhibit F *Frontpoint Shop*, "Touchscreen" (https://www.frontpointsecurity.com/shop/touchscreen) (describing use "throughout your home or office")].

33.    Limitation 38i – "wherein the wireless signal comprises information corresponding to the unique identifier of the sensing device;" The wireless signal sent from a Frontpoint sensor to the Hub includes information corresponding to the unique identifier of that specific sensing device. This allows the Hub to identify which sensor triggered the alarm or status change.  [See Exhibit F *Frontpoint Shop*, "Door & Window Sensors" (https://www.frontpointsecurity.com/shop/door-window-sensor).]

34    Limitation 38j – "wherein the network communication interface is further configured to communicate, via the network communication channel, the information corresponding to the unique identifier of the sensing device;" The Frontpoint Hub, via its network communication interface (e.g., Wi-Fi or cellular), is configured to communicate the information corresponding to the unique identifier of the sensing device (e.g., the identity of the triggered sensor) over the network communication channel to, for example, the monitoring service or the user's mobile phone.

35.    Limitation 38k – "wherein the wireless HUB system is further configured to communicate, via the network communication channel, a message about the updated status to the cellular phone;" The Frontpoint Hub can send alerts to the user's mobile phone via the network communication channel. Frontpoint's marketing materials confirm that users will "receive an instant security alert on your smartphone via the Frontpoint mobile app" upon a sensor being

triggered.  [See Exhibit F *Frontpoint Shop*, "Door & Window Sensors" (https://www.frontpointsecurity.com/shop/door-window-sensor).]

36.    Limitation 38l – "wherein the short range wireless channel established for the transmission of the wireless signal is separate from the network communication channel;" The Frontpoint Hub uses a short-range wireless channel (e.g., Z-Wave) to communicate with sensors and a separate network communication channel (e.g., Wi-Fi or cellular) to communicate with the cloud, monitoring services, and the user's cellular phone. These are distinct and separate communication channels. [See Exhibit F *Frontpoint Security Website*]

37.    Limitation 38m – "wherein the wireless HUB system is configured to notify a user of the updated status according to a configuration setting;" The Frontpoint Hub is configured to notify the user of the updated status (e.g., by push notification, email, or in-app alert) according to the user's configuration settings. Users can set preferences for how and when they are notified. [See Exhibit F *Frontpoint Security Website*]

38.    Limitation 38n – "wherein the configuration setting specifies when and how to notify the user of the updated status;" The Frontpoint Hub allows a user to specify when and how they are notified of an updated status. For example, users can configure custom alerts, choose notification methods (push, email, SMS), and set conditions for when to receive alerts. [See Exhibit F *Frontpoint Security Website*]

39.    Limitation 38o – "wherein the wireless HUB system is further configured to receive a signal through the network communication channel and convert the signal for production of corresponding information content;" The Frontpoint Hub is configured to receive a signal (e.g., a video stream from an IP camera) through the network communication channel and convert the signal to produce corresponding information content (e.g., displaying a live video

-10-

stream or recorded clip on the user's mobile phone). Frontpoint's marketing for its cameras describes "Remote access" to "view live video, and watch recorded clips with audio - straight from the Frontpoint mobile app." [See Exhibit F *Frontpoint Shop*, "Outdoor Security Cameras" (https://www.frontpointsecurity.com/shop/outdoor-security-cameras), *Frontpoint Security Website*.]

40.    Limitation 38p – "wherein the signal from the network communication channel comprises a compressed signal." Upon information and belief, the signal received from the network communication channel (e.g., a video stream from a camera) is in a compressed format to facilitate efficient transmission over a network. Frontpoint's cameras capture high-definition video, which requires compression for transmission over Wi-Fi and cellular networks. [See Exhibit F *Frontpoint Shop*, "Outdoor Security Cameras" (https://www.frontpointsecurity.com/shop/outdoor-security-cameras).]

41.    Limitation 38q – "and wherein the wireless HUB system further comprises a decoder configured to decode the compressed signal." The Frontpoint Hub includes a decoder (e.g., a hardware or software codec) configured to decode the compressed signal to produce the corresponding information content (e.g., video for display). The Frontpoint Hub's specifications include a decoder and audio capabilities for processing video and audio content.  [See Exhibit F *Frontpoint IQ Panel 4 User Guide* at p. 16, p. 17 (describing video display and two-way voice functionality).& *Frontpoint Security Website*]

## COUNT II
## INFRINGEMENT OF U.S. PATENT NO. 11,109,094

42.    Innovation Sciences realleges and incorporates by reference the above paragraphs as though fully set forth herein.

43.     Frontpoint has directly infringed, and continues to directly infringe, at least Claim 1 of the '094 Patent, literally and/or under the doctrine of equivalents, by making, using, offering for sale, selling, and/or importing the Frontpoint IQ Panel 4, Frontpoint Hub, Frontpoint Display Hub+, Frontpoint sensors, and Frontpoint cameras.  Frontpoint Defendants also induce others, including its customers, to infringe by selling products which are knowingly used in an infringing manner.  Frontpoint also contributes to infringement by selling components of infringing systems.

44.     Claim 1 of the '094 Patent recites a system comprising a central device. Frontpoint's accused products and services embody each and every element of this claim.

45.     Limitation 1 (Preamble) – "A system comprising a central device, wherein the central device comprises:" Frontpoint provides a wireless security system, including the IQ Panel 4, which acts as a central device. Frontpoint distributes and supports the Qolsys IQ Panel 4 as its flagship security panel. The IQ Panel 4 acts as a hub for smart home technology like thermostats, lights, cameras, locks and garage doors.  [See Exhibit F **Frontpoint Security Website**; *Frontpoint IQ Panel 4 User Guide* at p. 4, p. 5.]

46.     Limitation 1a – "an input interface configured for communicating over a non-IP based wireless connection, wherein the non-IP based wireless connection comprises a short range wireless communication channel; and" The Frontpoint IQ Panel 4 receives a wireless signal via a Z-Wave channel, which is non-IP based wireless connection and a short range wireless communication channel. The IQ Panel 4 includes a Z-Wave radio for communication with sensors and smart home devices. [See Exhibit F *Frontpoint IQ Panel 4 User Guide* at p. 5, p. 6.p.12]

47.     Limitation 1b – "an output interface configured for providing a communication

via a wireless communication network;" The Frontpoint IQ Panel 4 comprises an output interface for communication via a Wi-Fi or a cellular communication network. The IQ Panel 4 includes Wi-Fi and LTE communication capabilities.  [See Exhibit F *Frontpoint IQ Panel 4 User Guide* at p. 9 p.12 p.20]

48.    Limitation 1c – "an interface/buffer; and a decoder." The Frontpoint IQ Panel 4 receives compressed video and/or audio signals through a cellular network or Wi-Fi. For example, the Panel receives video signals and produces corresponding contents on its display. The Panel also receives signals for "two-way voice." Therefore, the Panel comprises an interface/buffer and a decoder for receiving and decoding the compressed signals for production of corresponding information.  [See Exhibit F *Frontpoint IQ Panel 4 User Guide* at p. 16, p. 17.p.18]

49.    Limitation 1d – "wherein the input interface is configured to receive, from a sensing device transmitter, via the short range wireless communication channel, a short range wireless communication indicating an updated status of an item, the short range wireless communication comprising a signal." The Frontpoint IQ Panel 4 receives a signal from a sensing device via a Z-Wave channel. The Z-Wave channel is the short range wireless communication channel. The signal over the Z-Wave channel is a short range wireless communication indicating an updated status of an item such as a door or window.  [See Exhibit F *Frontpoint IQ Panel 4 User Guide* at p. 12.]

50.    Limitation 1e – "wherein the central device is configured to transmit, via the output interface, a notification regarding the updated status based on the signal." A customized notification is communicated via the Wi-Fi or cellular network; therefore, the IQ Panel 4 is configured to transmit, via the output interface, a notification regarding the updated status based

-13-

on the signal.  [See Exhibit F *Frontpoint Security Website*; *Frontpoint IQ Panel 4 User Guide* at p. 20, p. 21.]

51.     Limitation 1f – "wherein the non-IP based wireless connection is initiated by the updated status detected by a sensing device sensor; wherein identification information corresponding to a sensing device is communicated via the short range wireless communication."  The non-IP based wireless connection, e.g., Z-Wave communication channel, is initiated by an updated status detected by a sensor, e.g., an intrusion. The short range wireless communication (the signal over the Z-Wave channel) comprises identification information corresponding to a sensing device at a door or window, for example.  [See Exhibit F Frontpoint IQ Panel 4 User Guide* at p. 12. & *Frontpoint Security Website*]

52.     Limitation 1g – "wherein at least one of a sound, a light, or a text that communicates information regarding the updated status is triggered by the short range wireless communication." A text message is communicated regarding the updated status as soon as the signal from a sensor is sent over the short range wireless communication channel based on detection of the updated status. The IQ Panel 4 can also trigger sounds and lights in response to sensor signals.  [See Exhibit F *Frontpoint IQ Panel 4 User Guide* at p. 20, p. 21. & *Frontpoint Security Website*]

53.     Limitation 1h – "wherein the output interface is configured to transmit the notification, to a cellular phone, via the wireless communication network." The notification regarding the updated status is communicated to a cellular phone, via the Wi-Fi or the cellular network. Therefore, the IQ Panel 4 comprises the output interface to transmit the notification, to a cellular phone, via the wireless communication network.  [See Exhibit F *Frontpoint Security Website*. P.21]

-14-

54.      Limitation 1i – "wherein the interface/buffer is configured to receive a compressed digital signal that comprises at least one of audio and video data, through a cellular communications network or a wireless local area network." The Frontpoint IQ Panel 4 receives compressed video and/or audio signals via the interface/buffer. For example, the Panel receives video signals and produces corresponding contents on its display.  [See Exhibit F *Frontpoint IQ Panel 4 User Guide* at p. 16, p. 17, p.18, p.19]

55.      Limitation 1j – "wherein the decoder is configured to receive the compressed digital signal from the interface/buffer and decompress the compressed digital signal to a decompressed digital signal for information production." Upon information and belief, the video signals are compressed signals which are decompressed by a decoder for production of corresponding information. For another example, the "two way voice" signals are also compressed for Wi-Fi network transmission or cellular network transmission for efficient bandwidth usage and for maintaining high-quality communication.  [See Exhibit F *Frontpoint IQ Panel 4 User Guide* at p. 16, p. 17. p.18, p.19]

## COUNT III
## INFRINGEMENT OF U.S. PATENT NO. 10,104,425

56.      Innovation Sciences realleges and incorporates by reference the above paragraphs as though fully set forth herein.

57.      Frontpoint has directly infringed, and continues to directly infringe, at least Claim 44 of the '425 Patent, literally and/or under the doctrine of equivalents, by making, using, offering for sale, selling, and/or importing the Frontpoint IQ Panel 4, Frontpoint Hub, Frontpoint Display Hub+, Frontpoint sensors, and Frontpoint cameras.  Frontpoint also induce others, including its customers, to infringe by selling products which are knowingly used in an

-15-

infringing manner.  Frontpoint also contributes to infringement by selling components of infringing systems.

58.     Claim 44 of the '425 Patent recites a wireless device. Frontpoint's accused products and services embody each and every element of this claim.

59.     Limitation 44 (Preamble) – "A wireless device, comprising:" Frontpoint provides a Home Security Hub, including the IQ Panel 4 and Frontpoint Hub. The Hub can communicate wirelessly with video cameras and sensors. The Hub has a device identifier, e.g., a MAC address, serial number, or name given by a user.  [See Exhibit F *Frontpoint Security Website*.]

60.     Limitation 44a – "a network interface configured to communicate via a WiFi network." The Frontpoint Hub contains Wi-Fi and/or cellular connection capability (WiFi network). Therefore, the Frontpoint Hub contains a network interface configured to communicate via a WiFi network. [See Exhibit F *Frontpoint IQ Panel 4 User Guide* at p. 12. & *Frontpoint Security Website* attached.]

61.     Limitation 44b – "the WiFi network being separate from a short range wireless communication channel." The Frontpoint Hub contains Wi-Fi and/or cellular connection capability (WiFi network). Separately, it can receive signals via Z-Wave channel (short-range wireless communication channel) from sensors (sensing devices). Therefore, the Frontpoint Hub contains a network interface configured to communicate via a WiFi network, the WiFi network being separate from a short range wireless communication channel.  [See Exhibit F *Frontpoint IQ Panel 4 User Guide* at p. 12. & *Frontpoint Security Website* attached.]

62.     Limitation 44c – "a processor; and a memory, the memory storing instructions that, when executed by the processor, cause the processor to perform operations comprising:" The Frontpoint Hub is an electronic device that can perform programmable actions and thus

-16-

must contain a processor. The Hub also contains internal memory that can store information about a list of sensors. The memory is coupled with the processor, and causes the processor to perform actions according to instructions in the memory.  [See Exhibit F *Frontpoint IQ Panel 4 User Guide* at p. 9, p.12. & *Frontpoint Security Website* attached.]

63.     Limitation 44d – "storing an identifier of a sensing device for security monitoring."  The Frontpoint Hub contains internal memory that can store information about sensing devices. This information can include identifiers including but not limited to IP and MAC addresses.  [See Exhibit F *Frontpoint IQ Panel 4 User Guide* at p. 9, p.12. & *Frontpoint Security Website* attached*]

64.     Limitation 44e – "receiving a wireless signal from the sensing device through the short range wireless communication channel, the wireless signal comprising information corresponding to an identifier of the sensing device, the wireless signal triggered by detection, by the sensing device, of a change of a condition." The Frontpoint Hub receives wireless signals from sensing devices in response to detection of a change of a condition. The wireless signal contains information corresponding to an identifier of the sensor and its status.  [See Exhibit F *Frontpoint IQ Panel 4 User Guide* at p. 11.p.12 & *Frontpoint Security Website* attached.]

65.     Limitation 44f – "identifying the sensing device based on the identifier." The Frontpoint Hub receives a wireless signal from a sensing device and identifies the sensing device based on the wireless signal. The identification information related to the sensing device is stored in the memory.  [See Exhibit F *Frontpoint IQ Panel 4 User Guide* at p. 5.12 & *Frontpoint Security Website* attached.]

66.     Limitation 44g – "initiating communication, via the network interface, of information regarding a status update based on the wireless signal." The Frontpoint Hub can

-17-

communicate information about a status update via the network based on a detection of an updated status.  [See Exhibit F *Frontpoint Security Website*.Id.]

67.     Limitation 44h – "wherein the wireless device is further configured to receive a compressed digital multimedia signal corresponding to a multimedia content." The Frontpoint Hub receives compressed digital multimedia signal for production of corresponding multimedia content.  [See Exhibit F *Frontpoint IQ Panel 4 User Guide* at p. 18, p. 17. & *Frontpoint Security Website* attached.]

68.     Limitation 44i – "wherein the wireless device further comprises a decoder configured to decompress the compressed digital multimedia signal accommodate production of the multimedia content on a digital display." Upon information and belief, the multimedia signals are compressed signals which are decompressed by a decoder for production of corresponding multimedia content. Therefore, the Frontpoint Hub comprises a decoder configured to decompress the compressed digital multimedia signal to accommodate production of the multimedia content on a digital display.  [See Exhibit F *Frontpoint IQ Panel 4 User Guide* at p. 18, p. 17. & *Frontpoint Security Website* attached.]

## COUNT IV
## INFRINGEMENT OF U.S. PATENT NO. 10,469,898

69.     Innovation Sciences realleges and incorporates by reference the above paragraphs as though fully set forth herein.

70.     Frontpoint has directly infringed, and continues to directly infringe, at least Claim 10 of the '898 Patent, literally and/or under the doctrine of equivalents, by making, using, offering for sale, selling, and/or importing the Frontpoint IQ Panel 4, Frontpoint Hub, Frontpoint Display Hub+, Frontpoint sensors, Frontpoint cameras, and the Frontpoint mobile application.

Frontpoint also induce others, including its customers, to infringe by selling products which are knowingly used in an infringing manner. Frontpoint also contributes to infringement by selling components of infringing systems.

71. Claim 10 of the '898 Patent recites a method for communicating information by a centralized HUB system with a device identifier. Frontpoint's accused products and services perform each and every step of this claim.

72. Limitation 10 (Preamble) – "A method for communicating information by a centralized HUB system with a device identifier, the method comprising." Frontpoint provides a wireless security system, including the IQ Panel 4, which acts as a centralized hub system. The Panel can communicate wirelessly with sensors and has a device identifier, such as a MAC address, serial number, or name given by a user. [See Exhibit F **Frontpoint Security Website**.]

73. Limitation 10a – "communicating configured data in initiating communications that are directed to the centralized HUB system, the configured data comprising information corresponding to a network address associated with a wireless local area network and information corresponding to the device identifier." The Frontpoint IQ Panel 4 connects to a wireless local area network. The network communications rely on network addresses. The configured data comprising a network's IP address and/or the Panel's MAC address are communicated to a server and used for initiating communications that are directed to the Panel. [See Exhibit F *Frontpoint IQ Panel 4 User Guide* at p. 12. & **Frontpoint Security Website**]

74. Limitation 10b – "the network address association associated with the device identifier." A network address and a device identifier corresponding to the Frontpoint IQ Panel 4

-19-

are associated. For example, the MAC address and IP address are associated. Therefore, the network address is associated with its device identifier under the meaning of the claim. [See Exhibit F *Frontpoint IQ Panel 4 User Guide* at p. 12. & **Frontpoint Security Website**]

75. Limitation 10c – "communicating, via a network interface and via a network communication channel of the wireless local area network, information about an updated status of the home device or the office device in connection with a wireless signal transmitted through a wireless channel regarding the updated status, the wireless signal comprising information corresponding to a unique identifier associated with the home device or the office device, the unique identifier associated with a unique phone identifier of a cellular phone." The Frontpoint IQ Panel 4 communicates with a sensing device via Z-wave channel. The Panel also communicates, via a Wi-Fi connection, information about an updated status of the home device or the office device. The unique identifier associated with the home device or the office device and the unique phone identifier are all included in the same user's account, all identification information in the same user's account being associated with each other. [See Exhibit F *Frontpoint IQ Panel 4 User Guide* at p. 12. & **Frontpoint Security Website**]

76. Limitation 10d – "wherein the information about the updated status is communicated to a user in connection with recognition of the unique identifier." Notifications are communicated to a user via instant alerts. The alerts include information about the updated status associated with the unique identifier via text, push notification, or email. Frontpoint IQ [See Exhibit F Panel 4 User Guide* at p. 4,5,11,12,13,20,21. & *Frontpoint Security Website*]

77. Limitation 10e – "wherein the information about the updated status is communicated to the user according to a configuration setting." The information about the updated status is communicated to the user in accordance with a configuration setting, e.g.,

-20-

Arming Stay, Arming Away. When a sensor detects a status change and transmits a wireless signal to the Panel, a user can be alerted.  [See Exhibit F *Frontpoint IQ Panel 4 User Guide* at p. 20, p. 21. & *Frontpoint Security Website*]

78.    Limitation 10f – "wherein the configuration setting specifies when and how to notify the user about the updated status." The user can be alerted when certain conditions are met, such as the detection of an updated status. Therefore, the Frontpoint Smart Home Security System's configuration setting specifies when and how to notify the user of the updated status. [See Exhibit F *Frontpoint IQ Panel 4 User Guide* at p. 12. & **Frontpoint Security Website**]

79.    Limitation 10g – "wherein a message about the updated status is communicated to the cellular phone; and" A message about the updated status is communicated to a user's cellular phone. For example, notifications regarding an updated status can be communicated via text, push notification, or email.  [See Exhibit F *Frontpoint Security Website*]

80.    Limitation 10h – "wherein the method further comprises: receiving a signal from the wireless local area network." The Frontpoint IQ Panel 4 receives video and/or audio signals through Wi-Fi, which is a wireless local area network. For example, the Panel receives video signals and produces corresponding contents on its display.  [See Exhibit F *Frontpoint IQ Panel 4 User Guide* at p. 16, p. 17. p.18.& *Frontpoint Security Website*]

81.    Limitation 10i – "performing a conversion of the signal by a converter to accommodate production of a corresponding information content, the signal comprising a compressed signal." The Frontpoint IQ Panel 4 receives compressed video signals over Wi-Fi that are converted by a converter for production of corresponding information content. For example, the signals for "two-way voice" communicated via the Panel and/or Video Cameras are

-21-

converted to accommodate production of corresponding information content.   [See Exhibit F *Frontpoint IQ Panel 4 User Guide* at p. 12. & **Frontpoint Security Website**]

82.    Limitation 10j – "decompressing the compressed signal by a decoder, the conversion comprising said decompressing the compressed signal by the decoder, the decoder included in the converter." Upon information and belief, the video signals are compressed signals which are decompressed by a decoder included in the converter. For example, the video signals received by the Panel are compressed and would require decompression of the video signals for the corresponding video content. For another example, the "two way voice" signals are also compressed for Wi-Fi network transmission or cellular network transmission for efficient bandwidth usage and for maintaining high-quality communication.   [See Exhibit F *Frontpoint IQ Panel 4 User Guide* at p. 12. & **Frontpoint Security Website**]

## WILLFUL INFRINGEMENT

83.    Innovation Sciences incorporates paragraphs 1 through 84 as if fully set forth herein.

84    Frontpoint has had knowledge of the '125 Patent since at least January 10, 2025, and knowledge of the remaining asserted patents no later than the filing of this Complaint. Frontpoint has continued its acts of inducement and contribution after receiving such knowledge.

85.    On January 10, 2025, Innovation Sciences, through its counsel, sent Frontpoint a notice letter specifically identifying U.S. Patent No. 10,368,125 and providing a detailed infringement analysis and representative claim chart mapping Claim 38 to specific accused Frontpoint products and explaining how those products satisfied the limitations of Claim 38 of the '125 Patent. The letter was sent via Federal Express and email to Frontpoint's registered agent and legal department. A true and correct copy of this notice letter is attached as Exhibit E.

-22-

86. Upon information and belief, Frontpoint received the notice letter on January 10, 2025, or shortly thereafter. Delivery confirmation demonstrates receipt at Frontpoint's principal place of business.

87. Despite receiving notice of the '125 Patent and the infringement allegations, Frontpoint has continued its direct infringing activities, including to make, use, offer for sale, sell, and/or import its infringing products and services without a license from Innovation Sciences, as well as its inducing and contributory activities.

88. Frontpoint's continued manufacture, use, sale, offer for sale, importation, and support of its accused products and services after receiving notice of the '125 Patent constitutes an egregious case of willful infringement as to the '125 Patent, justifying an award of enhanced damages pursuant to 35 U.S.C. § 284.

## DAMAGES

89. Innovation Sciences has suffered damages as a result of Frontpoint's infringement of the Patents-in-Suit. Pursuant to 35 U.S.C. § 284, Innovation Sciences is entitled to damages adequate to compensate it for Frontpoint's infringement of the Patents-in-Suit, but in no event less than a reasonable royalty for the use made of the inventions by Frontpoint, together with interest and costs.

## PRAYER FOR RELIEF

WHEREFORE, Innovation Sciences respectfully requests that the Court enter judgment in its favor and against Frontpoint and grant the following relief:

A. A judgment that Frontpoint has directly infringed, contributorily infringed, and/or induced infringement of one or more claims of U.S. Patent Nos. 10,368,125; 11,109,094; 10,104,425; and 10,469,898;

-23-

B.      An award of damages adequate to compensate Innovation Sciences for the infringement, but in no event less than a reasonable royalty for the use made of the inventions by Frontpoint, together with pre-judgment and post-judgment interest, costs, and disbursements as justified under 35 U.S.C. § 284;

C.      A finding that Frontpoint's infringement of the '125 Patent has been willful;

D.      An award of enhanced damages up to three times the amount found or assessed pursuant to 35 U.S.C. § 284;

E.      A declaration that this is an exceptional case and an award of its attorneys' fees and costs pursuant to 35 U.S.C. § 285; and

F.      An award of supplemental damages, an ongoing royalty, and all other post-verdict monetary relief permitted by law; and

G.      Such other and further relief as the Court deems just and proper.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Innovation Sciences hereby demands a trial by jury on all issues so triable.

Date: June 29, 2026                                 Respectfully submitted,

 /s/ Kendal M. Sheets
Kendal Sheets (VSB No. 44537)
ksheets@dnlzito.com
(703) 489-8937
Joseph J. Zito (*pro hac pending*)
jzito@dnlzito.com
(202) 466-3500
DNL ZITO
1250 Connecticut Avenue, NW
Suite 700
Washington, DC 20036

-24-

*Attorneys for Plaintiff*
*Innovation Sciences, LLC*

EXHIBITS

Exhibit A – U.S. Patent No. 10,368,125
Exhibit B – U.S. Patent No. 11,109,094
Exhibit C – U.S. Patent No. 10,104,425
Exhibit D – U.S. Patent No. 10,469,898
Exhibit E – Notice Letter from Innovation Sciences to Frontpoint dated January 10, 2025
Exhibit F – Exemplary Claim Chart
Exhibit G – IQ Panel 4 User Guide
Exhibit H – Frontpoint Security Website